UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Albert David Matthew, M.D.,            Civil No. 08-4610 (DWF/RLE)

           Plaintiff,

v.                                   **MEMORANDUM OPINION AND ORDER**

Unum Life Insurance Company
of America,

           Defendant,

and

Unum Life Insurance Company
of America,

           Counter-Claimant,

v.

Albert David Matthew, M.D.,

           Counter-Defendant.

---

Richard D. Snyder, Esq., and Sten-Erik Hoidal, Esq., Fredrikson & Byron, PA, counsel for Plaintiff and Counter-Defendant.

Molly R. Hamilton, Esq., and Terrance J. Wagener, Esq., Krass Monroe, counsel for Defendant and Counter-Claimant.

---

## INTRODUCTION

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiff's Complaint alleges that Unum improperly declined to pay Plaintiff's

long-term disability benefits from 1996 to July 2005. (Compl. ¶ 38.) Unum's counterclaim alleges that Unum is entitled to reimbursement for long-term disability payments that it made to Plaintiff between December 2004 and October 2005. For the reasons set forth below, both motions are denied.

## BACKGROUND

Plaintiff Albert David Matthew, M.D., is a board-certified urologic surgeon. Under his professional corporation, A. David Matthew, M.D., P.A., Plaintiff was a founding partner of Adult and Pediatric Urology ("APU") in St. Cloud, Minnesota. He and other APU physicians have surgical privileges at St. Cloud Hospital. (Matthew Decl. ¶¶ 1-2.)

Beginning in March 1990, Plaintiff was insured under an "Individual Disability Policy" (the "Policy") issued by Unum. (Matthew Decl. ¶ 8, Ex. C.) Plaintiff purchased the Policy to supplement the group disability plan that he had through APU and Hartford Insurance. (*Id*. ¶ 8.) The Policy provided:

> **Disability Benefit.** We will pay the Monthly Benefit Amount in any month after the Insured has satisfied the Elimination Period that
>
> 1. the Insured is totally disabled or experiences at least a 20% loss of net income in his regular occupation as a result of a present injury or sickness;
>
> 2. the injury or sickness which causes the loss of net income is the one which caused him to satisfy the Elimination Period;
>
> 3. he is receiving medical care from someone other than himself which is appropriate for the injury or sickness; and

> 4. benefits under the Disability Benefit, the Recovery Benefit and the Loss of Use Benefit combined have not been paid for the Maximum Benefit Period.

(*Id.* ¶ 8, Ex. C at 7.) The Policy defines "totally disabled" as when "injury or sickness restricts the Insured's ability to perform the material and substantial duties of his regular occupation to an extent that prevents him from engaging in his regular occupation." (*Id.* at 6.) "Regular occupation" is defined as "the Insured's occupation at the time the Elimination Period begins. If the Insured engages primarily in a professionally recognized specialty at that time, his occupation is that specialty." (*Id.* at 7.) "Net income" is defined in the policy as "gross revenue minus the Insured's share of the usual and customary business expenses which he or his company incurs on a regular basis and are essential to his established business operation." (*Id.*) Finally, "gross revenue" is defined as "income received by the Insured or his business for personal services performed by him in his regular occupation." (*Id.* at 6.) [1]

Plaintiff began experiencing pain in his feet, ankles, and knee in the late 1980s. Thereafter, his condition worsened. (Matthew Decl. ¶ 11.) In 1993, x-rays showed "some early degenerative changes in the first metatarsophalangeal joint." (*Id.*, Ex. E at 7.) In 1995, Plaintiff was diagnosed with "[d]egenerative arthritis left ankle, and possibly subtalar joint," as well as "[d]egenerative arthritis, first metatarsophalangeal joint." (Matthews Decl. Ex. E at 8.) At this time, his treating physician noted that because of the

---

[1] A November 2001 enhancement to the Policy, provided to Plaintiff at no extra cost, changed the definition of "gross revenue" to "any income earned by the Insured or his business for personal services performed by him in his regular occupation." (Matthew Decl. ¶ 10, Ex. D.)

3

"significant disabling changes in [Plaintiff's] left foot and ankle," walking or standing for any length of time would be difficult. (*Id.*)

Plaintiff's ankle problems worsened in 1996. An April 24, 1996 letter from Dr. Lowell Lutter, an orthopedic foot and ankle specialist, noted the "rapid progression that [Plaintiff] has had from May of 1993 to the present in terms of subtalar joint and ankle joint arthritis." (Matthews Decl. ¶ 12, Ex. F; *see also* Ex. G.) Dr. Lutter noted that Plaintiff "would be classified as being disabled to function at a job which requires standing in a [sic] operating room for 4-5 hours at a time." (*Id.*) At that time, Plaintiff informed his partners at APU that he would no longer be able to perform major surgeries due to the problems with his ankles. (Matthew Decl. ¶ 15 and Ex. H.) Plaintiff's condition continued to deteriorate. (*Id.* ¶¶ 16-17.) By 1997, Plaintiff could not stand for longer than 45 minutes to one hour. (*Id.* ¶ 18, Ex. E at 8.) Plaintiff also began to have increasing problems in his right knee. (*Id.*, Ex. J.) An MRI in 1998 showed continuing irregularities of his foot and ankle. (*Id.* ¶ 20, Ex. L.)

By 2004, Plaintiff's physician recommended that Plaintiff stand for no more than 22 minutes. (*Id.,* Ex. N.) At that time, his doctor noted that Plaintiff's "talus, which is the supporting bone of his ankle, has lost its blood supply and has subsequently collapsed to the point where he no longer has a satisfactory ankle to support his weight." (*Id.*) Specifically, as to Plaintiff's limitations, the doctor further noted:

> The patient is markedly restricted in his activities. He basically cannot stand for more than 22 minutes without having to sit down and rest for several hours after that. He cannot do any kneeling or stairs. He cannot do any squatting. No rotational activities. No impact activities. As far as walking, the maximum I feel he can walk, and this would be with pain,

would be two blocks. Subsequent to this walking, the patient would have to sit for several hours to reach his pre[-]walking pain level.

(*Id.*) In July 2005, Plaintiff ceased working altogether and underwent a series of surgeries on his left shoulder, left ankle, right knee, and left wrist. (*Id.* ¶ 22 Ex. I.)

Plaintiff first submitted a Notice of Claim to Defendant in August 1996. (Matthew Decl. ¶ 30, Ex. R.) On his claim, Plaintiff indicated that he was a "Urologic Surgeon-Urologist" and that the duties of his job were open urologic surgical procedures, endoscopic diagnostic and surgical procedures, office practice, hospital consultation, and inpatient services. (*Id.*, Ex. S.) Plaintiff indicated that he could no longer perform open urologic surgeries due to pain in his ankle and his inability to stand for the time required to perform the surgeries. (*Id.*) Plaintiff later informed Unum that he was submitting his claim for total disability because his inability to perform major surgical procedures had "an impact on [his] ability to remain a urologic surgeon" and that performing these surgeries "represents the major source of revenue for urologic surgeons." (*Id.* ¶ 32, Ex. U.)

Although Unum initially agreed that Plaintiff was residually disabled in August 1997, Unum never paid any benefits to Plaintiff because Plaintiff failed to provide income information and financial records in order for Unum to determine whether a 20% loss of net income had occurred. (Matthew Decl. ¶ 33, Ex. V.) Unum stated that Plaintiff could provide additional information "at any time." (Snyder Decl. ¶ 6, Ex. E.)

In 2004, Plaintiff filed a claim for disability benefits from 1996 through 2004. (Matthew Decl. ¶ 34, Ex. W.) At this time, Plaintiff provided financial information and

other additional information. Upon review of this documentation, Unum agreed to pay disability benefits beginning with September 2004. (*Id.*, Ex. Y.) However, in 2008, Unum sent a letter requesting repayment of $114,470.48 in disability benefits, stating that its decision to pay the benefits had been in error. (*Id.*, Ex. Z.)

In his Complaint, Plaintiff asserts that Unum breached its contract with him by refusing to pay long-term disability benefits. Plaintiff asserts that he meets the definitions of both total disability and residual disability under the terms of the Policy. In support of his claim, Plaintiff has submitted a declaration detailing his daily activities at APU. Plaintiff states that his occupation involved 9-12 hour days, as well as night and weekend coverage for patients and area hospitals. (Matthew Decl. ¶ 6.) Plaintiff attests that he spent two days each week performing scheduled and emergency surgeries at St. Cloud Hospital, two days a week treating patients at APU, and one day a week in an outreach program at smaller Minnesota hospitals. (*Id.*) Further, Plaintiff details the physical demands of the occupation, including the ability to stand for long periods of time and walk considerable distances. (*Id.* ¶ 7.) Unum disputes Plaintiff's assertions in this regard.

As to Plaintiff's alternative claim of residual disability, the parties have submitted dueling evidence regarding Plaintiff's earnings prior and subsequent to Plaintiff's disability. Unum contends that Plaintiff does not meet the 20% threshold. Plaintiff asserts that his taxes do not necessarily reflect his decline in productivity after 1996 because the income he earned in his capacity as an owner of the business did not decline

6

so steeply. Thus, Plaintiff asserts that he has incurred the requisite 20% loss of income to support a claim of residual disability under the Policy.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. ERISA Applicability

As a threshold matter, the parties dispute whether ERISA governs the Policy. Whether the Policy is an ERISA "plan" or administers benefits that are subject to ERISA is a mixed question of law and fact. *Bannister v. Sorenson*, 103 F.3d 632, 636 (8th Cir. 1996). Pursuant to ERISA, the definition of an employee welfare plan is "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing . . . benefits in the event of sickness, accident, disability, death or unemployment . . .." 29 U.S.C. § 1002(1). "In determining whether a plan . . . (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 629 (8th Cir. 2001) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)).

The regulations enacted pursuant to ERISA state that "the term 'employee benefit plan' shall not include any plan, fund or program . . . under which no employees are participants covered under the plan . . .." 29 C.F.R. § 2510.3-3(b). By example, a "plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under [ERISA]." *Id*. Further, the regulations state that a partner in a partnership is not considered an "employee" with respect to ERISA. 29 C.F.R. § 2510.3-3(c). The Supreme Court has instructed that "[p]lans that cover only sole owners

or partners and their spouses . . . fall outside [ERISA's] domain" but plans that cover a working owner or partner and at least one non-owner employee are considered employee benefit plans and thus "fall entirely within ERISA's compass." *See Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 21 (2004).

Here, Plaintiff asserts that he was not an employee of APU but rather the founder and a partner of the corporation. The record includes a partnership agreement that supports Plaintiff's assertion that he is not an employee of APU. (Second Matthew Decl. ¶ 4, Ex. CC.) Further, the plan itself is called an "Individual Disability Policy" and the Plaintiff, as an individual, is the sole insured under the policy. (Second Matthew Decl. Ex. C at 11.) On these facts, Plaintiff contends that ERISA does not apply.

Unum, on the other hand, asserts that Plaintiff was an employee of APU because Plaintiff identified APU as his employer on a claim form, he indicated on tax returns that he was primarily compensated in "salaries and wages (other than to partners)," and that he indicated on a claim form that his "employment" at APU had been terminated due to his disability. Unum also asserts that the Plaintiff is not a partner because the partnership was set up under Plaintiff's professional corporation rather than by the Plaintiff as an individual. Further, Unum contends that because the partnership agreement differentiates between the partner entities and the physician employees, Plaintiff was a physician employee and not a partner.

Further, Unum asserts that the Policy is covered by ERISA because the benefits, beneficiaries, source of financing, and procedures for receiving benefits are all readily ascertainable. Unum points to APU's payment of premiums for covered employees, the

9

manner in which the benefits and beneficiaries are set forth in the Policy, and APU's list-billing and administrative procedures for paying the Policy premiums.

Here, Plaintiff is the sole insured under the Policy and he is the Policy's sole owner. Plaintiff is an owner and partner of APU through his professional corporation. The Policy does not cover any non-owner or non-partner employees of APU. The partnership agreement differentiates between the Partners, which are the professional corporations, and the physician employees, which appear to include the Plaintiff and the other physicians. (Second Matthew Decl. ¶ 4, Ex. CC at 6 ("Every physician employed by a Partner for the purpose of providing medical services shall also be a Shareholder of the Professional Association which is the Partner.").) The Policy itself lists the form of coverage as "owner professional." (*Id*. at 3.) Plaintiff's status as the sole shareholder of a professional corporation that he owns and that "employs" him is irrelevant, as are Plaintiff's representations about APU as his "employer" on his tax forms and claim forms. Because the Policy is an individual policy that does not include any non-partner employees in its coverage, the Policy is not an "employee benefit plan" under 29 C.F.R. § 2510.3-3. The Court finds that ERISA does not apply.[2]

---

[2] Moreover, the Court finds unpersuasive Unum's arguments regarding APU's administrative involvement in advancing premiums through the list-billing procedure. APU's ministerial acts are not sufficient to demonstrate a scheme to administer benefits.

### III. Total Disability

The parties dispute whether Plaintiff qualifies as "totally disabled" under the terms of the Policy. Unum asserts that Plaintiff was not "totally disabled" under the terms of the Policy because he could perform other duties of his occupation and because he continued to garner significant income despite not being able to perform lengthy surgical procedures.

As noted above, the Policy defines "totally disabled" to mean that "injury or sickness restricts the Insured's ability to perform the material and substantial duties of his regular occupation to an extent that prevents him from engaging in his regular occupation." (Matthews Decl. ¶ 8, Ex. C at 6.) The Minnesota Supreme Court and the Eighth Circuit have held that a claimant does not need to be unable to work completely in order to support a finding of total disability. *See Laidlaw v. Commercial Ins. Co. of Newark*, 255 N.W. 2d 807, 813 (Minn. 1977) ("total disability does not mean a state of absolute helplessness or inability to perform any task relating to one's employment . . . . The mere fact that the insured is earning some income does not negate the existence of total disability."); *see also Dowdle v. Nat'l Life Ins. Co.*, 407 F.3d 967, 972 (8th Cir. 2005) (holding that an orthopedic surgeon was totally disabled where he could no longer perform orthopedic surgeries but was still able to perform office consultation duties). The Eighth Circuit has noted that "[w]hen a Plan uses an individual's own occupation to determine whether he or she is totally disabled, being able to perform some job duties is insufficient to deny benefits." *Seitz v. Metro. Life Ins. Co.*, 433 F.3d 647, 651 (8th Cir. 2006).

In *Dowdle*, the Eighth Circuit considered a disability policy with language similar to the one at issue here. Dr. Dowdle, an orthopedic surgeon, had a disability policy that defined "total disability" as the inability "to perform the material and substantial duties of an occupation." *Dowdle*, 407 F.3d at 968. A rider to the policy defined "occupation" as "the occupation of the Insured at the time a disability, as defined in the Total Disability provision of the policy, begins." *Id*. While under the policy's coverage, Dr. Dowdle suffered injuries in a plane crash that left him unable to stand at an operating table for an extended period of time. As a result, he could not perform orthopedic surgery. *Id*. at 969. When Dr. Dowdle resumed performing office visits and doing independent medical evaluations, the insurer determined that he was no longer totally disabled pursuant to the terms of his policy because he could conduct office consultations and other non-surgical tasks. *Id*. On summary judgment, the district court ruled in favor of Dr. Dowdle and determined that he was entitled to total disability benefits under the policy and its rider; The insurer appealed. *Id*. The parties did not dispute the facts related to the injury. Rather, the main dispute was whether Dr. Dowdle could be totally disabled despite being able to still perform some, but not all, of the functions of his occupation.

The Eighth Circuit noted that under Minnesota law, if the "insurance policy language is clear and unambiguous, the language used must be given its usual and accepted meaning." *Id*. at 970 (quoting *Wanzek Const., Inc. v. Employers Ins. of Wausau*, 679 N.W.2d 322, 324 (Minn. 2004)). Further, the court stated that if the "policy language is ambiguous, it must be interpreted in favor of coverage. *Id*. (quoting *Wanzek*, 679 N.W.2d at 325). Recognizing that National Life had conceded that Dr. Dowdle

12

could no longer perform surgery, "which is clearly the most important and substantial material duty of [his] occupation as an orthopedic surgeon," the court upheld the district court's finding that Dr. Dowdle was entitled to total disability benefits. *Id*. at 972.

Here, Unum asserts that Plaintiff did not perform enough major surgeries *before his disability* requiring that he stand for a long period of time in order to have lengthy surgeries be considered a substantial and material part of his occupation. Unum offers evidence indicating that the majority of surgeries performed by the Plaintiff in the period from 1995 to 1997 were surgical procedures that could be performed in under 1-1/2 hours. Plaintiff asserts that these figures are irrelevant because they are indicative only of his ability to perform some aspects of his occupation. Plaintiff asserts that the ability to perform major surgeries is an essential element of his occupation as a urologic surgeon, and further asserts that the termination of his partnership at APU was indicative of the importance of surgical performance to his occupation.

The Court finds that genuine issues of material fact exist as to whether major surgical procedures were a material and substantial duty of Plaintiff's own occupation. Plaintiff's evidence addresses the importance of surgical performance to the profession in general, but not to Plaintiff's day-to-day practice. Because such issues of fact remain as to what constitutes a substantial and material duty of Plaintiff's occupation, both parties' motions for summary judgment on the issue of total disability are denied.

IV.     **Residual disability**

In the event that a factfinder were to determine that Plaintiff is not totally disabled, a question would still remain as to whether Plaintiff is residually disabled under the

Policy. The parties have provided conflicting evidence to support their positions as to whether Plaintiff sustained a 20% loss of net income, including conflicting methodologies by which to calculate the 20% loss. Because genuine issues of material fact exist with regard to Plaintiff's pre- and post-disability income, both parties' motions are denied in this regard.

## CONCLUSION

The Court has found that ERISA does not apply to Plaintiff's claims. However, the Court has also found that genuine issues of fact exist as to whether Plaintiff is totally or residually disabled.

The parties have also raised the issue of the statute of limitations that applies to Plaintiff's claims. Plaintiff asserts that because he has alleged a continuing disability, the statute of limitations does not begin to run "until 90 days after the end of the total continuous period of disability for which the company [is] liable." *Ryan v. ITT Life Ins. Corp.*, 450 N.W.2d 126, 129 (Minn. 1990). The parties appear to agree that *Ryan* applies to Plaintiff's claim of total disability. However, Defendant contends that *Ryan* is only limited to total disability claims and that its rule does not apply to claims of residual disability. Here, Plaintiff asserts a claim for total *or* residual disability from a continuous period dating back to 1996. The Court sees no distinction from the rule set forth in *Ryan*. Thus, the Court finds that Plaintiff's claims are not barred by the statute of limitations.

Finally, the Court notes that, because genuine issues of fact remain as to Plaintiff's total or residual disability, similar questions remain as to Unum's counterclaim for reimbursement of benefits paid to Plaintiff.

Therefore, it is **HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment (Doc. No. 30) is **DENIED**.

2. Plaintiff's Motion for Summary Judgment (Doc. No. 32) is **DENIED**.


Dated: September 24, 2009            s/Donovan W. Frank
                                               DONOVAN W. FRANK
                                               United States District Judge